(C. D. 1610)

R. J. SAUNDERS & Co., INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided April 22, 1954)

*Jordan & Klingaman* (*Edward F. Jordan* of counsel) for the plaintiff.
*Warren E. Burger*, Assistant Attorney General (*Joseph E. Weil*, trial attorney), for the defendant.
*Brooks & Brooks* (*Thomas J. McKenna* of counsel) as *amicus curiae*.

Before OLIVER and MOLLISON, Judges

OLIVER, Chief Judge: Counsel for the respective parties have stipulated that the merchandise in question is "a complete so-called electron microscope," the same in all material respects as the article that was the subject of our decision in *R. J. Saunders & Co., Inc.* v. *United States*, 28 Cust. Ct. 39, C. D. 1386, the record in which case was incorporated herein on motion by plaintiff and to which no objection was made by defendant.

In the incorporated case, as in the present one, the merchandise was classified by the collector as a microscope under paragraph 228 (b) of the Tariff Act of 1930, and assessed with duty thereunder at the rate of 45 per centum ad valorem. Plaintiff's principal claim in this case, which is the one that was sustained in the incorporated one, is for classification under the provision in paragraph 353 of the Tariff Act of 1930, as modified by T. D. 51802, for "All articles suitable for producing, rectifying, modifying, controlling, or distributing electrical energy," with a duty assessment of 15 per centum ad valorem.

A description of the "electron microscope" under consideration was described in our decision in the *R. J. Saunders & Co., Inc.*, case, *supra*, as follows:

\* \* \* In physical appearance, it does not resemble in any degree the common light microscope. It is a large, white enameled metal cabinet, looking more like a large automatic washing machine than anything else. While the record does not give its weight, it will be safe to assume that it weighs upward of 500 pounds. It has a large circular glass-covered opening about 8 inches in diameter set at an angle at the top. This is known as the fluorescent viewing screen. Set at various points on the slanting top of the cabinet are various knobs or controls which control the operation of the apparatus. The ordinary light microscope of common use consists of glass lenses, usually capable of focusing on the object or specimen under examination, such object usually being placed on a glass slide for examination through a series of lenses. The object or specimen, in magnified form, is actually viewed by the observer. The presence and use of lenses is seemingly an essential feature of the ordinary light microscope. There are no lenses, as that term is commonly understood, in the imported article. The apparatus before us is described on the invoice as "parts for electron image producer." These parts, however, were assembled after importation into the finished article, as shown in the photograph before us (plaintiff's illustrative exhibit A). In other words, it was the entire apparatus imported in knocked-down form ready for actual assembling after importation.

A description of the apparatus and its operation was given by a representative of North American Philips Co., Inc., the importer. The protest was filed in the name of the customs broker who made the entry. This witness (Mr. Buhler) was familiar with the operation of this instrument and prepared a diagram (illustrative exhibit B) which was used as a basis for describing its operation. The large glass-covered opening on the top is described as a fluorescent viewing screen which is at one end of a column which extends into the article. At the rear of this column is an electron gun which provides a source of electrons by means of a hot filament which is heated to incandescence by electrical energy. The electrons emitted from the glowing filament are given direction and speed by means of a high-voltage field. This high-voltage field is produced by means of a high potential applied between the electron gun and a plate. This electron gun is made up of a high-tension insulator at the end of which is a metallic cap with a small aperture behind which the filament, above referred to, is located. The electrons flow from the hot filament in a stream. The electrons move axially along the column. The force which propels the electrons in a directional stream is the high voltage supplied by a high-voltage generator. The specimen to be examined is located in the path of the electron beam in a suitable holder and in proper relation to one of the magnetic electrical coils employed for shaping or controlling the electron beam. The instrument can be used to view the shadow picture or, by use of a film or plate holder containing a sensitized film or plate, a permanent record can be made for later study. Either roll film or plates can be used in making this record. The entire apparatus operates under a vacuum as electrons will not pass through glass or air, and for this purpose a vacuum-pumping system is part of the general assembly.

In use, this apparatus produces enlarged shadow images of minute particles or areas in the general fields of chemistry or metallurgy or biology, in other words, all minute organic and inorganic materials. The actual specimen is not seen or photographed. What is seen is the effect of the electronic beam as modified by passing through the specimen.

When the film or plate holder is placed in the path of the stream of electrons, it blocks out the beam so that the shadow picture cannot be seen on the fluorescent

screen. There are no focusing devices or lenses used in connection with this plate or film holder. It is simply placed in the stream of electrons.  * * *

At the time of trial of the present case, Government counsel stated that defendant is "not relying upon" the collector's classification, but contends that the merchandise in question is properly classifiable as a laboratory instrument under paragraph 360 of the Tariff Act of 1930. The same claim was advanced by defendant in the incorporated case, and in our disposition thereof, we stated as follows:.

> Counsel for the defendant contends that if the imported merchandise be held not dutiable as a microscope, as classified by the collector, the court should find it to be properly dutiable under the provisions of paragraph 360, Tariff Act of 1930, as "Scientific and laboratory instruments, apparatus, utensils, appliances * * * and parts thereof." In so holding, we are asked to overrule the protest without sustaining the collector's classification.  In reply, counsel for plaintiff points out that under numerous decisions in this court and in our appellate court, it has been repeatedly held that to be dutiable under paragraph 360, *supra*, the instruments, apparatus, utensils, or appliances must be used in pure, as opposed to applied, science. *W. L. Conover* v. *United States*, 17 C. C. P. A. (Customs) 324, T. D. 43743; *United States* v. *Adlanco Industrial Products Corp.*, 21 C. C. P. A. (Customs) 249, T. D. 46778. The record in the present case establishes that these electronic microscopes are used to examine minute organic and inorganic materials chiefly in laboratories in industry, chemistry, metallurgy, biology, and similar fields. (R. 32, 33.) They are used in industrial, hospital, university, and police laboratories. It thus seems clear that their use is not exclusively or chiefly in the field of pure science and, therefore, they would not come within the provisions of paragraph 360, Tariff Act of 1930.

Supplementing the record in the incorporated case, there is also before us at this time the testimony of two witnesses, both of whom appeared on behalf of defendant. Their statements, which were directed to the uses of the electronic microscope in laboratories, are cumulative of evidence along the same line that appears in the *R. J. Saunders & Co., Inc.*, case, *supra*, and which is summarized in the foregoing quotation.

The instant case presents nothing new, either factually or in a legal way, from what was discussed and passed upon in the said *R. J. Saunders & Co., Inc.*, case, so that our decision therein is *stare decisis* of the issues presented herein.  We, therefore, adhere to the reasoning followed and the conclusions reached in the incorporated case and hold the merchandise described on the invoice accompanying entry 844441 as "Parts for electron image producer" to be dutiable at the rate of 15 per centum ad valorem under paragraph 353 of the Tariff Act of 1930, as modified, *supra*, as claimed by plaintiff. Tô that extent, the protest is sustained.

Plaintiff having abandoned the protest so far as it relates to entry 959314, the same is dismissed as to that entry.

Judgment will be rendered accordingly.